IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 25, 2015

**STATE OF TENNESSEE v. MARK DEVEN DOVER**

**Appeal from the Criminal Court for Sullivan County**
**No. S62,891      Robert H. Montgomery, Jr., Judge**

**No. E2014-01558-CCA-R3-CD** - **Filed June 3, 2015**

Mark Deven Dover[1] ("the Defendant") was indicted for vandalism over $1,000. He pleaded guilty to vandalism over $500, a Class E felony. After a sentencing hearing, the trial court denied the Defendant's request for judicial diversion and sentenced him to two years' supervised probation pursuant to the plea agreement. On appeal, the Defendant challenges the trial court's denial of judicial diversion. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, and NORMA MCGEE OGLE, JJ., joined.

Steven M. Wallace, District Public Defender; and Steven D. Bagby, Assistant District Public Defender, Blountville, Tennessee, for the appellant, Mark Deven Dover.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Barry Staubus, District Attorney General; and Lesley Tiller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

---

[1] At times, the record refers to the Defendant as Mark Deven Dover, II. However, the indictment identifies the Defendant as Mark Deven Dover. In this opinion, we will refer to the Defendant as his name appears in the indictment.

# I. Factual and Procedural Background

The Defendant pleaded guilty to vandalism charges stemming from an incident where he damaged a security scanner and some merchandise at Wal-Mart. At the sentencing hearing, the Defendant admitted that he damaged a security scanner and "threw two pieces of fruit and a box of candy," but he denied spraying deer urine on or otherwise destroying other merchandise in the store.

At the sentencing hearing, the Defendant addressed several items in his presentence report. First, he stated that the presentence report did not appear to contain any "significant errors." However, he noted that the report did not reflect that he had been charged with misdemeanor domestic assault. The Defendant explained that the charge had been dismissed because the victim failed to appear at the court dates.

The presentence report also noted that the Defendant had previous citations for speeding and driving on a suspended license. The Defendant explained that he received those citations when he was on his way to court for his arraignment in this case. The Defendant explained that his license had previously been revoked but, at the time of the stop, his license had been reinstated four months. That fact was not updated in the computer. He noted that the driving on a suspended license charge was still pending but claimed that it was "about to be resolved" and he expected the charge to be dismissed. He also said that he intended to pay the speeding ticket. The Defendant acknowledged that he failed to appear for the arraignment on the speeding ticket and driving on a suspended license charges. He tried to turn himself into the Sullivan County Jail, but he "waited around [booking] for two hours and they never came and got [him]."

The Defendant stated that he was a life-long resident of Sullivan County and that he lived with his father. He previously worked as a welder at Utility Trailer, but he was placed on disciplinary leave when he was charged with vandalism. However, the Defendant said he was "good friends" with a supervisor at another plant, who offered to give him a welding job once "this matter is taken care of." Before he was placed on leave, the Defendant worked full time and made $17 per hour.

The Defendant admitted that he was intoxicated when he damaged the Wal-Mart security scanner. When the police explained that he was being charged with vandalism, the Defendant admitted responsibility and offered to pay for the damage he had caused. The Defendant claimed that he had no other criminal record other than the conviction for vandalism and the charges for domestic assault, speeding, and driving on a suspended license.

On cross-examination, the Defendant denied spraying Wal-Mart's merchandise with deer urine or otherwise destroying merchandise. He reported that he was with two other individuals when he damaged Wal-Mart's property, but he did not see either of them spray deer urine on merchandise or poke holes through items. The Defendant could not explain why an officer reported seeing him doing such things. The Defendant reported that he was 22 years old.

The Defendant stated he used marijuana three times a week and admitted that he tested positive for marijuana use while he was on bond for these charges. The Defendant also clarified that his driving privileges were currently suspended for a speeding ticket that he had not paid. He explained that this was a different speeding ticket than the one he got while on his way to his arraignment. He had not yet paid the speeding ticket because he was unemployed.

The Defendant also admitted that he had been convicted of public intoxication. Officers found him asleep in his car on the side of the road. Prior to driving his car, the Defendant had been drinking but "wasn't too impaired," and he pulled over to take a nap. He woke up to "someone yanking [him] out of the car." He was charged with public intoxication and resisting arrest and pleaded guilty to public intoxication without consulting a lawyer. The Defendant also admitted that he was charged with consumption of alcohol while he was under the age of 21. After the Defendant completed supervised probation, the charge was dismissed.

Finally, the Defendant reported that his girlfriend was pregnant with his son. She had previously lived in Bristol, Tennessee but had since moved to Lebanon, Virginia.

The trial court noted that it had considered the presentence report, the Defendant's testimony, and evidence presented at the plea colloquy, as well as any enhancing and mitigating factors and the nature and characteristics of the criminal conduct involved in the case. As to the Defendant's request for judicial diversion, the trial court addressed each factor set forth in State v. Electroplating, Inc., 990 S.W.2d 211 (Tenn. Crim. App. 1998). First, the trial court found that the Defendant's amenability to correction was "very low." It noted that the Defendant had previous charges of public intoxication and resisting arrest. Further, the trial court expressed concern that the Defendant had prior unpaid speeding tickets even though "he had some . . . potentially significant income from an employer." Additionally, as a result of his decision not to pay the speeding ticket, the Defendant's driver's license had been revoked, and he was required to pay another fee to have his license reinstated. Also, since he had been released on bond for the vandalism charges, the Defendant regularly committed illegal acts by using and possessing marijuana. Finally, the trial court noted that the presentence report indicated that the Defendant was on probation at the time of the vandalism offense.

As to the circumstances of the offense, the trial court stated, "I don't like to use this word, but it's basically stupid stuff." Additionally, because the offense was committed while the Defendant was on probation, the trial court found that the circumstances of the offense "reflect[ed] very poorly" on the Defendant and weighed against granting judicial diversion.

The trial court found that the Defendant's criminal record also weighed against granting diversion, noting the arrests for public intoxication and resisting arrest as well as the unpaid speeding ticket. Additionally, the trial court found that the Defendant's social history weighed against judicial diversion. The Defendant was unemployed, was not married, and gave "no indication of any intent to get married." With respect to the Defendant's physical and mental health, the trial court found that the factor was "neutral" because the presentence report indicated that the Defendant described his physical and mental health as "excellent." Finally, the trial court found that granting judicial diversion would not serve to deter the Defendant or the public, and it would not be in the public's best interests.

The trial court denied the Defendant's request for judicial diversion. The Defendant was sentenced to two years' supervised probation pursuant to the plea agreement. This timely appeal followed.

## II. Analysis

We first note that the record on appeal does not contain a transcript of the Defendant's guilty plea submission hearing. However, the transcript from the sentencing hearing is adequate to allow for meaningful review. Therefore, we will review the appeal on its merits and presume that the missing guilty plea submission hearing transcript would support the ruling of the trial court. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012).

On appeal, the Defendant argues that the trial court abused its discretion in denying his request for judicial diversion because it did not "fully and properly consider[] all the relevant factors for the decision." The State argues that the Defendant has failed to overcome the presumption that the trial court's decision was reasonable. We agree with the State.

Tennessee Code Annotated section 40-35-313 governs judicial diversion procedure. Upon a finding of guilt, the trial court may place a qualified defendant on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2014). Once the defendant successfully completes probation, the charge will be dismissed. Tenn. Code Ann. § 40-35-313(a)(2) (2014). The statute defines a "qualified defendant" as a defendant who:

(a) Is found guilty of or pleads guilty or nolo contendre to the offense for which deferral of further proceedings is sought;

(b) Is not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved in the duties of the person's office;

(c) Is not seeking deferral of further proceedings for a sexual offense, a viation of § 71-6-117 or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, or a Class A or B felony;

(d) Has not previously been convicted of a felony or a Class A misdemeanor for which as sentence of confinement is served; and

(e) Has not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(I) (2014).

However, satisfying these criteria does not presumptively entitle a defendant to judicial diversion, but simply allows the trial court to grant diversion in appropriate cases. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. State v. Faith Renea Irwin Gibson, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999); State v. Baxter, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)).

In determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

(a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

Electroplating, 990 S.W.2d at 229; Parker, 932 S.W.2d at 958. In addition to the Electroplating factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment,

current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." State v. Anthony Adinolfi, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted). The record must reflect that the trial court weighed all the Electroplating factors against each other, and the trial court must give an explanation of its ruling on the record. State v. King, 432 S.W.3d 316, 326 (Tenn. 2014); Electroplating, 990 S.W.2d at 229.

When the record reflects that the trial court considered the Electroplating factors, identified which factors were relevant, and explained its ruling on the record, this Court must apply a presumption of reasonableness and review the judgment for an abuse of discretion. King, 432, S.W.3d at 319, 327. We will affirm the trial court's judgment "so long as there is any substantial evidence to support the trial court's decision." Id. at 327. However, if the trial court fails to consider and weigh the relevant factors, the presumption of reasonableness does not apply, and this Court may either conduct a *de novo* review or remand the issue for reconsideration. Id. at 327-28.

In this case, the record shows that the trial court methodically considered and weighed each of the Electroplating factors, identified the factors weighing against granting judicial diversion, and explained the basis of its ruling on the record. Therefore, we apply a presumption of reasonableness and will affirm the judgment if there is any substantial evidence to support it. See id. at 327.

The Defendant first contends that the trial court erred by finding that he was on probation at the time of the offense. The Defendant argues that the presentence report only indicated the date he was placed on probation, the fact that he was placed on probation for six months, and the date of the offense but is otherwise silent as to whether he was still on probation at the time of the instant offense. He claims that misdemeanor probationers are often released from probation early, and the trial court should not have assumed that the Defendant was still on probation at the time of the offense. We note that the presentence report showed that the Defendant was placed on probation for six months on April 24, 2013, and the vandalism offense was committed on August 25, 2013. There is no proof in the record that the Defendant had been released from probation prior to his committing the vandalism offense. The Defendant bears the burden of proving that he is a suitable candidate for judicial diversion. See Faith Renea Irwin Gibson, 2009 WL 1034770, at *4. If the presentence report was incorrect, he should have brought it to the attention of the trial court, as he did with the domestic assault charge. He failed to do so. Therefore, the trial court reasonably inferred that the Defendant was still on probation at the time of the offense.

Next, the Defendant argues that the trial court erred when it considered the

circumstances of the offense as a negative factor. The Defendant points to the trial court's comment that the offense was "basically stupid stuff" and claims that such comment indicates that the consideration should have been favorable to judicial diversion when compared to the more serious crimes for which judicial diversion may be considered. However, the Defendant admitted that he was intoxicated at the time of the offense, that he regularly used marijuana while released on bond, and that he had been charged with alcohol-related offenses. The Defendant's continued criminal behavior can impact the trial court's analysis of the circumstances of the offense. See State v. Dycus, – S.W.3d –, 2015 WL 332050, at *11 (Tenn. Jan. 23, 2015). Therefore, even though the Defendant's actions in the charged offense neither threatened nor caused bodily harm and judicial diversion may be granted for offenses more serious than vandalism, we cannot say that the trial court abused its discretion when it determined that the circumstances of the offense weighed against granting judicial diversion.

Similarly, the Defendant claims that the trial court should not have considered his prior criminal record as a negative factor because his prior record contained only "very minor violations of the law and should not in and of themselves be sufficient to deny his request for judicial diversion." However, the Defendant's criminal record was not the only factor weighing against granting judicial diversion in this case. The trial court found that every factor other than the Defendant's mental and physical health weighed against granting judicial diversion. Therefore, this argument is without merit.

Next, the Defendant argues that the trial court should have considered the Defendant's social history as a neutral factor. He notes that the trial court found that the Defendant's social history was a negative factor, citing that he was not married and was unemployed. The Defendant contends that most 22-year-old men are not married and have not yet established permanent employment. Further, he argues that the trial court failed to consider his young age, education level, job experience, and other factors set forth by State v. Washington, 866 S.W.2d 950 (Tenn. 1993). The record reflects that the Defendant lost his job after he was charged with the instant offense and he did not anticipate finding employment until after disposal of the charges. Additionally, the Defendant's girlfriend was pregnant with his child and lived in another state. We agree that certain factors cited by the trial judge relate to moral values, not to social history, and should not have been considered. We disagree however with the Defendant's assertion that the trial court should have considered the Defendant's social history as a neutral factor. While awaiting adjudication of this matter, the Defendant regularly used marijuana. He was intoxicated when he and his friends vandalized Wal-Mart. He was previously convicted of public intoxication. The Defendant had previous citations for speeding and driving on a suspended license which he tried to excuse by claiming he was on his way to court for his arraignment in this case. The Defendant has a history of not paying traffic tickets even when he had a good job. He failed

to appear for court concerning traffic violations. He has shown no respect for the judicial process and the laws which governs society. His attitude is atrocious. The Defendant presented no evidence, other than his young age, to show that his social history should weigh in favor of granting judicial diversion. In light of the evidence regarding the Defendant's social history, we cannot say that the trial court abused its discretion when it considered this factor to weigh against granting judicial diversion.

The Defendant also notes that the trial court considered the Defendant's mental and physical health in passing and ruled it to be a neutral factor. However, he argues that the trial court "did not fully and properly consider his physical and mental health in reaching its decision." However, the Defendant points to nothing in the record to show that the trial court abused its discretion in its weighing of the Defendant's physical and mental health. As such, we cannot say that the trial court abused its discretion when it considered this to be a "neutral" factor.

Finally, the Defendant contends that the trial court erred when it found that denying judicial diversion would serve to deter the Defendant as well as the public. Specifically, the Defendant argues that, in order for the trial court to rely on deterrence as a factor for denying judicial diversion, there must be evidence in the record that shows such denial will have a deterrent effect in the community. See State v. Horne, 612 S.W.2d 186, 187-88 (Tenn. 1980). However, we need not reach this question because other considerations support the trial court's denial of judicial diversion. See id. Therefore, we conclude that the trial court did not abuse its discretion when it denied judicial diversion.

### III.  Conclusion

The judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE